Case number 20-2954 from the Western District of Missouri, Morningside Church, et al. v. Leslie Rutledge, et al. Good morning, Your Honors. Derek Ankrum on behalf of the panelists, the Morningside Dependents, or the Morningside Partners. May it please the Court. Very good. Thank you, Your Honor. Tweaking an observation made by the Fifth Circuit in the 2002 case of Rommel v. Leidoff, the Missouri Court of Appeals explained in 2010 that if you pick a fight in Missouri, you can reasonably expect to settle it here. In this case, Your Honor, there are three overriding principles that dictate reversal of the District Court's order and judgment dismissing the action. First, is this Court's de novo standard of review for dismissals under Rule 12b-2, which requires no deference to the decision of the District Court. Second, is that the Morningside Parties must make only a prima facie showing of personal jurisdiction which imposes a minimal evidentiary burden because no discovery is permitted prior to such ruling and no evidentiary hearing was held on the motions to dismiss. Under this standard, the Court must resolve all factual disputes. Was this, was it a 12b-1 motion or a 12b-6 motion? Your Honor, it was actually a 12, I believe a 12b-2, which would be lack of personal jurisdiction. All right. Well, under jury, then there is the ability, 12b-2 would be like 12b-1. You can have fact-finding on a jurisdictional issue if it's requested or if the Court wants it. Did that happen here? No, it did not. You're absolutely correct, Your Honor. The Court could have ordered a jurisdictional discovery and it could have held an evidentiary hearing to determine whether or not personal jurisdiction was found. It elected not to do so. The District Court instead took the case or the motions rather on the exhibits that were submitted by the parties in the briefing that was filed. And as a result, the appropriate standard is the prima facie standard or prima facie case of personal jurisdiction standard under which the Court must view the case in all inferences of the case in favor of the exercise of personal jurisdiction and must resolve all factual disputes in favor of the plaintiffs asserting the personal jurisdiction lies. Third, Your Honor, Your Honors rather, in terms of the overriding considerations that we believe dictate reversal of the District Court's order and judgment, and this is perhaps the most important, is the recognition that the Morningside Party's claim is a Section 1983 action asserting violation of their rights to freedom of religion, speech, the press, and association protected by First Amendment arising from the content of communications directed to them tortuously commanding under color of state law affirmative conduct in the state of Missouri. And I raise this point because it is an overarching, there is overarching emphasis in the briefs of the respondents indicating that basically trying to sort of blur the line between a declaratory judgment action and a Section 1983 action, as well as the underlying conduct that gives rise to the allegations of tort in this case. The tort in this case is not an investigation, it is not the enforcement of the state officials' state laws. Instead, the underlying conduct that is alleged to give rise to the tort is in fact the content of communications, namely a civil investigative demand and a subpoena received by the Morningside Parties that compels them to compile documents, both from Morningside Church Productions, as well as its affiliates, including Morningside Church, a plaintiff, and its employees, Pastor Jim Baker, also a plaintiff in this action. And as a result of that, Your Honor, what I would like to do is to ensure that the court has a very dissuade from the focus on that particular conduct, which is the content of the communications that we believe violates the First Amendment. Does your argument distinguish between the identity of partners who are residents of the investigating states, Arkansas and California, from others, other members? So Judge Olken, I'm not sure that I understand your question. Well, the ability to demand production and discovery out of state for proper regulation in state. If you're saying that the claim of religion trumps those cases, then this is truly an demanding information of partners in New Jersey and Minnesota. When all they're supposed to be doing is regulating Arkansas, then that's a different question. Judge Olken, I believe I do understand your question. Let me point out that at this juncture, we're not really looking at the underlying merits of the claim, whether they're entitled to do it or not entitled to do it. The district... You want freedom of discovery in this situation. I'm talking about your tort claim, not the jurisdiction. You're looking for freedom from discovery of all out-of-state regulators, as long as you can say, well, you're asking for something that we consider part of our faith. So certainly, your honor, to the extent that what you're asking about is the merits of the underlying tort, first, I don't think the district court reached that issue because it couldn't have reached that issue. I want to know what your position is. My position is, your honor, I think I would describe it as you did, which is an heroic argument. And that is, we believe that to the extent that an out-of-state regulator seeks the production of information that would disclose the members of a church and their contribution histories, regardless of whether those members reside in that state, it is a violation of the First Amendment. But only those categories of information? How about transaction documents and so forth that would obviously disclose the purchaser and seller? So, again, your honor, I think to the extent... You want freedom from that. You basically want freedom from all consumer regulatory investigations. No, your honor, we certainly don't want freedom from the regulations. We think that information... And we responded in part to the CIP issued by the State Department. You can't investigate consumer fraud without acquiring the information that you just said is First Amendment, not only protected, but excluded from discovery. That's your position. Our position relates to the identities of the individuals and to the extent that it would tie those identities to specific transactions or contributions, that you are correct. I believe you're not correct to the extent that you wouldn't be able to obtain, as a state regulator, information beyond that. You would certainly be able to obtain information related to the transactions themselves. I don't know why, if there is an admission or an acknowledgement that there were, for example, California individuals that were members of the church that transacted business with the church, why the specific individual identities of those would be necessary for state regulators. You certainly can conduct an investigation to determine whether or not the business practices or the religious practices... How about local federal prosecutors? So, I'm not sure that I understand whether or not a federal prosecutor could get that information. Yeah. Well, you're asking a hypothetical that we haven't seen. I haven't looked at that issue. We've never dealt with this in the criminal... I've never looked at this... I've had a number of fraud cases over the years in which religion was the basis for the cons, so to speak. So, you're treading into very deep water here. I understand, Your Honor. I think it is certainly possible in a situation where a fraud is proven that there are certainly going to be some overriding considerations. But again, at this particular juncture, the allegations are merely that. There is no allegation of criminal activity. There's merely... If the charge you're claiming is precluded by controlling law, that has a big impact on your jurisdiction argument. It could have a big impact on the jurisdiction argument, Your Honor, to the extent that whether or not what we allege is, in fact, a tort. But again, that wasn't the basis for the dismissal here. There was no discovery that was permitted related to whether or not the conduct of the defendants, the out-of-state officials, in this action would, in fact, constitute a tort, nor did any of... Did you make the tort argument to the district court? We asserted that it was a tort, and none of the defendants disagreed that, at least I don't recall... Did you define the tort in this manner? Yes, we did, Your Honor. In our pleading, we identified what we believed were the constitutional violations, including the seeking of information related to the identities of the members of the church. Now, wait a minute. But semantically, did you make the argument that under the tort, did you seize upon the tort subsection of the Missouri long-arm statute? Yes, we did. And say that these First Amendment claims... Yes, we did. Okay, and the district court did not address that? The district court did not address whether or not... Was there an argument hearing? There was an argument hearing, Your Honor. Is it transcribed? So, it wasn't on the motions to dismiss. It was with respect to the motion for temporary restraining order that we filed. And yes, it was transcribed and is a part of the record. Okay. The court did not hold a special hearing on the motion to dismiss, although the personal jurisdiction issues did get raised to some degree at that oral argument. And ultimately, the TRO was denied largely due to arguments also related to personal jurisdiction. I'm having to answer the questions right now, but I would like to reserve some time for my rebuttal if there aren't any. Thank you. Yeah. Well, Counsel, you know you can't say something new on rebuttal. So now, I mean, you haven't... And we interrupted you. That's grounds to give you more time. But you can't come in ready to argue three questions and only get to the first one and cover the last two on rebuttal for your last word. That's not the way we do it. Fair enough, Your Honor. If you want me to address the other issues now or to respond to the arguments that are raised by them, I would do that on rebuttal. I'm happy to go ahead and just briefly address the other points that we raised. Rebuttal is your choice, but I'm not going to allow you to argue anything new on rebuttal unless opposing counsel have opened the door. Understood. All right, Mr. Hofmeyer. Yes, thank you, Your Honor. May it please the court. My name is Sam Hofmeyer, and I'm with Brian K. Blayton-Paysner, and I represent two of the four appellee government officials in this case. I represent Tori Verber-Salazar, the district attorney for the county of San Joaquin, California, and Kimberly Lewis, the district attorney for the county of Merced, California. I plan to spend just the first five minutes of our time arguing the case as it relates to my clients before turning it over to the other appellees. There are several key reasons why the district court dismissed this case for lack of personal jurisdiction. First, my clients have no contacts with the state of Missouri. The only relevant potential contact in this case involving my clients is a subpoena that Defendant Lewis issued. However, Defendant Lewis issued that subpoena to a plaintiff's registered agent in California, and the subpoena was designed to investigate plaintiff's actions that eventually reached California and impacted California residents. Thus, my clients have no direct contacts with the state of Missouri, and plaintiffs are attempting to assert personal jurisdiction based purely on an effects-based personal jurisdiction theory. They're claiming that the California subpoena had effects in Missouri that impacted them. However, this court's decision in Johnson v. Arden precludes jurisdiction in this case. In that case, this court narrowly construed the Calder effects test, which is what plaintiffs rely on, and said that if we're looking at effects, and if a jurisdictional theory is based only on effects, then that's not enough, and there will not be personal jurisdiction. Instead, to even consider the Calder effects test, we have to have some direct contact between the defendant and the forum. Here, we have none. Johnson says that there can be no personal jurisdiction. Second and relatedly, the Supreme Court's decision in Walden v. Fiore is directly on point. This case is actually virtually indistinguishable from Walden. As in Walden, no part of my client's conduct occurred in Missouri. The only link between my clients and Missouri is that plaintiffs happened to reside there. The simple fact that my clients took actions in California directed at plaintiffs, whom my clients may have known were Missouri residents or had Missouri connections, is not sufficient on its own to establish personal jurisdiction, and the fact that plaintiffs suffered an alleged harm in Missouri is not sufficient. That places the emphasis on the wrong party in the jurisdictional analysis. It puts the emphasis on the plaintiff, which Walden, the Supreme Court said, is not the proper analysis. Walden makes clear that a defendant's knowledge of a plaintiff's forum connections coupled with foreseeable harm to a plaintiff in the forum simply is not enough to establish personal jurisdiction. Walden's directly on point, and it controls the decision here. Third, my clients did not expressly aim their actions in Missouri for the purpose of having the consequences of those actions felt in Missouri. This court has held that for purposes of personal jurisdiction, a defendant's actions must be uniquely or expressly aimed at the forum state. Counselor, let me put this on a little broader stage. From the standpoint of your position, how many federal courts in the country are going to have to determine this issue? Or state courts, and state courts in rulings that would be appealable to the, will be cert petitionable? Are you, just so I understand your question, Judge Loken, are you asking if- The tort that's been defined this morning, how many federal courts, how many federal courts should have to decide that? I think only one federal court should have to decide the issue as it relates to my clients, and it should be in California. If this broad interpretation is allowed, I think it could open the door to numerous lawsuits around the country, and could really lead to a slurry. No, but if, so whatever the California court says, then the Arkansas court can say something different. Right. And then, if those AGs lose, the Michigan AG steps in, or the Iowa AG, or some way, and we go all over and do it again. Don't you think this tort ought to be decided nationwide, if you will? Your Honor, I believe- It should be decided by a forum where it'll be binding? Well, it has to be decided in a forum that has personal jurisdiction over the defendants, and there are no connections here between the defendants and the state of Missouri, so there is no personal jurisdiction. Will your client stipulate that if there's personal jurisdiction only as to Arkansas, the ruling will be binding on California investigators? Your Honor, I can't say that standing here today. I don't know if they'd be willing to do that. I suspect that they would want a decision made in a case that has personal jurisdiction over them. With that, I'd like to give the other appellees some time to answer some questions and to make their arguments, so we would ask that the court affirm the district court's dismissal. Very good. Mr. Eisenman? Thank you, Judge Loken, and may it please the court. Jonathan Eisenman for Appellee Los Angeles City Attorney Mike Feuer. The only argued connection between Mike Feuer and the state of Missouri is a subpoena served and enforceable only in California that Merced County District Attorney Kimberly Lewis issued. That doesn't even connect Lewis with Missouri, but assuming for argument's sake that it does, there's not enough here to link Feuer with Lewis so that Lewis's contacts can be imputed to Feuer. There's the argument that Lewis was acting as Feuer's agent, but there are no facts to substantiate that. By this court's holding in Womack v. Rich, the allegations would have to be of things that agent and he her principal. It can't be something that Lewis did, and the pleadings don't contain any such allegations as to Feuer. Then there's the argument that Feuer and Lewis are co-conspirators, but plaintiffs can see that this court has never adopted a conspiracy theory of jurisdiction, and they don't address at all the problem that even under Textor, which is the principal out-of-circuit case that they cite, the alleged co-conspirator that was the jurisdictional hook committed a tortious act within the forum, and there's no evidence, no allegation that anyone committed a tortious act within the forum here. In any event, the subpoena, as Mr. Hoffmeier was saying, Lewis's subpoena is not enough to confer jurisdiction even over Lewis, so there's no need to reach the question whether it's enough to confer jurisdiction vicariously over Feuer or really anyone else. I don't want to belabor that point, so unless the panel has any questions, I'll yield the remainder of the time to Mr. France. Well, I guess my question would be is if they refuse to... Hello? I'm still here. Judge Volkin? Yes. I'm sorry, I can still hear you. Well, I lose track of which California defendant is admitting participation in the subpoena, but if the subpoena issues out of California and there's no response, then what? There could be enforcement action in California. The question is whether what a California court does to enforce the subpoena can have any effect on the Morningside parties in Missouri. I think that ends up going to probably a full faith and credit question at the end of the day if a California court enters a judgment against Morningside. California court... Whichever party it is that wants to enforce a subpoena goes to the local state court. Yes. State court orders an enforcement order. Now what? The enforcement order can be enforced against the Morningside parties to the extent that they're in a jurisdiction where the order can reach them. As I said, I think that may become a full faith and credit problem if somebody tries... If there's a judgment that someone tries to enforce in Missouri, then it may become an issue for the Missouri courts whether they want to enforce that judgment or not. But as far as enforcing the judgment against the Morningside entities as they're present in California, and parenthetically, they've consented to California jurisdiction by creating an agency here, there shouldn't be a problem in terms of enforcing it in California. Not even an issue. And I should add, by the way, that Mike Feuer, my client, did not issue the subpoena. He doesn't have the authority to issue such a subpoena, so he couldn't delegate it to anyone else, and he can't enforce the subpoena. Only Lewis can do so. Okay. Thank you. Thank you. Mr. France? May it please the court, your honor. Vincent France, Assistant Attorney General here today on behalf of Arkansas Attorney General Leslie Rutledge. I want to make sure the court's aware, in February of 2020, in a nationwide television broadcast, the appellants sold Silver Solution, claiming that it treated and prevented COVID-19. As a result of that nationwide broadcast, consumers in Arkansas purchased it, which resulted in Attorney General Rutledge investigating the sale of the Silver Solution. And during the course of her investigation, she sent two letters and one phone call advising the appellants that she was investigating them under the Arkansas Deceptive Trade Practices Act. Nine days after receiving the letter, the appellants preemptively filed this lawsuit, and in their complaint, they stated that there was a threat of imminent legal action. And in fact, 11 days later, General Rutledge filed suit in Arkansas State Court, relying on the same reasons that this court did Peterson v. Frost, and considering the first factors of the minimum context test, which are the nature, the quality, and the quantity of the contacts, this court should uphold the district court's decision and find that it lacked personal jurisdiction over Rutledge. During her investigation, General Rutledge never visited Missouri, nor did she engage in any business dealings. She never purposely availed herself of the benefits of the state of Missouri. And in fact, her only reason for sending letters to Missouri because that's just where the appellants happen to be. We're talking about the Missouri long-arm statute. What about the Bryant case? Well, your honor, the Missouri long-arm statute requires that there be a tort, and it has to comply with the requirements of due process. In Peterson, one of the claims that this court, that was brought before the court was... Well, wait a minute, it has to be a tort. Are you denying that a 1983 violation of the rights of First Amendment free speech is not a tort? No, your honor. What I'm saying is that even under the Calder test, which this court evaluated recently, that General Rutledge did not have sufficient minimum context to satisfy the requirements of due process. No. Because in Peterson... As I understand the Bryant decision, it's if the content of a phone call is the best purposeful availment if the content is tortious. Your honor, but... Here the content is to demand production of member identity, church member identities, and church contributions, right? Well, no, your honor, because the purpose of the letters was to obtain information about Arkansas consumers who purchased a product when they were told that it treated and prevented COVID-19. This is... Right, okay. So this... And then there was some negotiations and you wound up, you wanted transaction data. Right, regarding those specific transactions. Which would be at least church member identities, and I gather the way they view it would be contribution evidence as well. Okay, so now if that violates the First Amendment, why isn't it... And forget whether it's just a letter or the subsequent negotiations, but why aren't we meeting the Bryant test interpretation of the tort subpart of the long arm? Well, your honor, I would go to Cantwell versus Connecticut, where the Supreme Court said you can't hide behind a religion to defraud the public. Yeah, but that's merits. That's merits. Your honor, it's... You didn't address this in your brief, and that's why I came to the argument and wanted to ask you about it, because it seems to me that's the sticking point here on the jurisdiction issue. Well, your honor, the effects test would still show that there's no personal jurisdiction, because there weren't any... General Relich wasn't trying to cause harm to the people in Missouri. She was trying to protect the Arkansans and consumers. Well, this is specific jurisdiction, though. It's not general. Right. So if it's committing, if it's a communication across state lines that the content of which is tortious as to the forum state recipient, does Bryant suggest that Missouri would say its long arm statute is satisfied? Again, your honor, not in this case. And I would also go back that... Just because that's what your view of due process? No, your honor, because simply because in their complaint, they allege it's tortious doesn't... Under IGBAL, unadorned accusations of he-harming aren't sufficient. We are explicitly asking for information regarding Arkansas consumers. We're not saying that... We have to decide in order to affirm on a jurisdiction issue that my discussion with Mr. Ark... With counsel, plaintiff's counsel, establishes a tort claim that doesn't pass the IGBAL plausibility standard. I don't think under IGBAL, it does, your honor. They're just alleging that... And we presented documents and... That's not what the cake makers of the world think about the extent of religious freedom. This kind of issue has been going to the Supreme Court pretty regularly. So it suggests to me some maybe more than surface plausibility. Your honor, I have... I think it's a stretch, but that doesn't mean it isn't... Your jurisdiction defense melts real fast into the merits, it seems to me. Well, your honor, even if the... As the district court correctly did, it would have also dismissed General Rutledge based upon abstention because 11 days after plaintiff's filed this lawsuit, she filed one in Arkansas State Court and regardless of the type of claim, even though a federal suit is brought first, abstentions can still apply so long as there's been no proceedings of substance and the federal case was in its infancy, both of which these cases were. And in fact, in Younger v. Harris, the Supreme Court explained that underlying all abstention doctrines is the importance of federalism and comedy.  It has the right to enforce consumer protection laws. And your honor, my last point is, I would also refer you all to my 28-J letter that was submitted this week. The 5th Circuit in Buckley v. Department of Industrial Relations determined that a cease and desist letter by an out-of-state defendant to another state is not unto itself sufficient for personal jurisdiction so long as the purpose of that letter is to protect property or residents of that government official's own state. And that's exactly what General Rutledge was intended to do, was trying to do. She was trying to protect Arkansas consumers who had been sold a product that the appellants claimed to treat and cure COVID-19. And on behalf of General Rutledge, I ask that you affirm the decision of the District Court. Thank you. Now we're at rebuttal time. Thank you, your honor. Let's put another minute on because I took up some of your initial. Logan, I appreciate that, but I also appreciated your questions delving into the issues before. Real briefly in reply, I want to address, obviously, Mr. France raised an issue with respect to a 28-J letter that he filed earlier this week. That case, like other cases cited by all of the state officials, including Stroman Realty and Berry College v. Rhoda, Stroman Realty v. Vercinski and Berry College v. Rhoda, all are distinguishable on the same grounds. And I want to just highlight those because those are really the crux of the cases that are cited by the state officials in opposition to the District Court's exercise of personal jurisdiction and distinguish those or sort of put those next to Defense Distributed v. Greewall case that we cited. All those cases that have been cited to you by the parties, only Defense Distributed asserted a tort claim arising from the allegedly unconstitutional content of a letter received from an out-of-state official. Mr. France, I believe, inaccurately described the Bulkley v. Associates or Bulkley and Associates v. the California Department of Industrial Relations case that was handed down earlier this week, or last week rather, by the Fifth Circuit. There was not a cease and desist letter in connection with that case. The only communications involved were a letter seeking to collect on an administrative fine that had been previously imposed by the California Department of Industrial Relations and second, a letter that referenced a prior inspection and a possible future inspection. However, that case, Stroman Realty and Berry College, were not claims asserting that the content of communication was itself tortious. Stroman Realty involved a 1983 challenge to the regulatory jurisdiction of a state to require licenses for timeshares, and it was generally based on Commerce Clause grounds. As the Fifth Circuit acknowledged in Defense Distributed, that case attacked the regulatory regime. Same thing with Berry College, it also attacked a regulatory regime that was imposed by the Tennessee Higher Education Commission. It did not involve a tortious communication. Berkley and Associates was not a 1983 claim at all. It did not involve a tort-based claim. In fact, it was, as described by the appellant who had lost below, it was a state law administrative action whereby they were attempting to, within the state of Texas, invoke a California statute that allowed you to judicially, collaterally attack an administrative finding. So, none of those cases at all have any impact here. Instead, the case of Defense Distributed is most directly on point, was recently entered by the Fifth Circuit, and then CERT was denied, as we referenced in our Rule 28J letter as well. The issue I think that's really important to bring out from Defense Distributed, because the defendants attempt to distinguish it, the appellees attempt to distinguish it in their briefing, but the issue that was actually sent up to the Supreme Court on CERT was whether a non-resident state official who is enforcing his own state laws subjects himself to personal jurisdiction, or rather himself to personal jurisdiction in another state when he sends a single cease and desist letter from his home state to a resident of the forum state. That's the way that not only the attorney general, the New Jersey attorney general who was the defendant in that case, but the way that the California attorney general in an amicus brief described the issue that they wanted the Supreme Court to take, which means that they described the holding of the Fifth Circuit as being contrary to the view that they expressed. So, while there are efforts to distinguish Defense Distributed, it's directly on point because it arises from the content of communications of a single cease and desist letter. In this case, we actually have greater contact because the letters compel affirmative conduct within the state of Missouri. We believe that we have stated a prima facie or plausible case of tort and a prima facie case of personal jurisdiction. We ask the court to reverse the district court's order and judgment dismissing this case on the grounds of 12B2. Thank you, counsel. It certainly raises unusual and significant issues. It's been well-briefed and argued. We will take it under advice.